UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBY McKNIGHT, *et al*,

Plaintiffs,

v.

BLUEOVAL SK, LLC, and FORD MOTOR COMPANY,

Defendants.
______________________________/

Case No. 4:25-cv-13024

F. Kay Behm
United States District Judge

**OPINION AND ORDER DENYING**
**DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 89, 91)**

## I. PROCEDURAL HISTORY

Plaintiff Bobby McKnight filed the original complaint asserting collective action and class action claims against Defendant BlueOval SK, LLC (BOSK) on September 24, 2025. (ECF No. 1). On October 17, 2025, BOSK filed its first motion to dismiss for lack of personal jurisdiction. (ECF No. 18). On November 11, 2025, Plaintiff filed an amended complaint against BOSK and Ford Motor Company (Ford). (ECF No. 34). BOSK then filed a motion to dismiss the amended complaint. (ECF No. 39). On January 21, 2026, District Judge Gershwin A. Drain granted a motion to consolidate in a related case

filed by Plaintiffs Sean O'Brien and Randall Moore against BOSK and Ford, and designated this case as the lead case. (ECF No. 62). Defendants then refiled their motions to dismiss the consolidated case. (ECF Nos. 65, 67). On February 3, 2026, Plaintiffs filed a motion for leave to file a consolidated complaint. (ECF No. 71). On May 18, 2026, the case was reassigned, and the Court granted Plaintiffs' request, allowing Plaintiffs to file a consolidated complaint by June 4, 2026 (ECF No. 83), which they did (ECF No. 88).

Now before the Court are Defendants' fourth round of motions to dismiss, in which BOSK continues to argue for dismissal for lack of personal jurisdiction, and Ford argues for dismissal for failure to state a claim. (ECF Nos. 89, 91). Both motions are fully briefed (ECF Nos. 92, 93, 94, 95), and a hearing was held on November 4, 2026. For the reasons set forth below, the motions will be **DENIED**.

## II. FACTUAL BACKGROUND

According to the complaint, Plaintiffs are three residents of Kentucky who are, or were, overtime-eligible, hourly employees of Defendants at a manufacturing facility in Glendale, Kentucky, which manufactures batteries for electric vehicles. (ECF No. 88). Both Defendant BOSK and Defendant Ford operate the Kentucky manufacturing facility and a similar facility in

Tennessee, which they call "BlueOval SK" facilities. (*Id.*, PageID.743). Although Plaintiffs were scheduled to work 40 hours per week in their respective positions, they regularly worked more than 40 hours each week, as did other similarly situated production employees, but Defendants failed to pay their overtime wages for significant pre- and post-shift work. (*Id.*, PageID.744-746). The pre-shift work included donning personal protective equipment such as hard hats, boots, shoe covers, and vests; proceeding through security checkpoints; proceeding through the facility via a pathway that required them to walk hundreds of yards to an assigned location; and ensuring that the production machinery was working properly. (*Id.*, PageID.746-748). Once at their assigned location, Plaintiffs were able to "clock in," but regardless of the time they clocked in, their compensable time was rounded to their scheduled start time. (*Id.*, PageID.747-748). Plaintiffs estimate that it takes approximately five to ten minutes to don the personal protective equipment, and five to fifteen minutes to walk to their assigned location in the facility. (*Id.*, PageID.746, 748). The post-shift work included returning and doffing their personal protective equipment. (*Id.*, PageID.749). Additionally, Defendants issued non-discretionary bonuses, based on certain attendance metrics, that were not factored into the regular rate of pay for

purposes of paying overtime. (*Id.*, PageID.750). Finally, Defendants' payroll policy automatically deducted time from Plaintiffs' pay for meal breaks, regardless of whether an uninterrupted meal period was actually taken. (*Id.*, PageID.752-753). Plaintiffs bring a collective action and class action under the Fair Labor Standards Act (FLSA) and the Kentucky Wages and Hours Act based on compensation owed to them and those similarly situated for pre- and post-shift work.

According to the complaint, Defendant BOSK is the 50/50 joint venture of parent companies Defendant Ford and non-party SK On Co. Ltd. (*Id.*, PageID.722, 731). BOSK is a Delaware limited liability company with its principal office and headquarters located at 1 American Road, Suite 120 in Dearborn, Michigan—the address of Defendant Ford's world headquarters—and BOSK has had "pervasive contacts with the State of Michigan for years." (*Id.*, PageID.727). BOSK has made several filings with the Michigan Department of Licensing and Regulatory Affairs (LARA), the Kentucky Secretary of State, and the Tennessee Secretary of State indicating that its principal office and headquarters are in Dearborn, Michigan. (*Id.*, PageID.728-730). BOSK's managers and members are also located in Dearborn, Michigan. (*Id.*, PageID.731). Between October 10 and October 16,

2025, after the filing of this action, BOSK made several filings in Michigan, Kentucky, and Tennessee attempting to change its address. (*Id.*, PageID.730-731).

Alongside its motion to dismiss, BOSK has filed a declaration from Jiem Cranney, its Chief Financial Officer. (ECF No. 90). In the declaration, Cranney says that BOSK is a limited liability company organized under the laws of Delaware, with only two operations located in Kentucky and Tennessee. (*Id.*, PageID.840). He says that although BOSK maintains a mailing address in Michigan, that address is used only as a mail drop, and BOSK does not perform any of its operations or corporate governance functions in Michigan, nor does it maintain a headquarters in Michigan; BOSK's corporate decision-making, strategy sessions, and board meetings occur at its facilities in Kentucky and Tennessee. (*Id.*, PageID.840).

In the complaint, Plaintiffs also allege that Defendants BOSK and Ford "have interrelated operations, common management, common control of labor relations, and common ownership and financial control," and that they therefore represent a single employer and single enterprise for purposes of the FLSA. (*Id.*, PageID.732). Specifically, Plaintiffs say that Ford provides billions of dollars of capital for BOSK; has guaranteed 50 percent of a loan

totaling billions of dollars from the Department of Energy for BOSK; has entered into binding contracts for raw materials, such as lithium, for BOSK; and shares its world headquarters at 1 American Road in Dearborn, Michigan with BOSK. (*Id.*, PageID.732-733). All of BOSK's managers are located at Ford's world headquarters and BOSK's managers include Ford's management and executive employees, meaning that both BOSK and Ford share officers and management level employees. (*Id.*, PageID.734). For example, Jiem Cranney, the Chief Financial Officer of BOSK, publicly represents himself as an employee of Ford and has been employed by Ford for over sixteen years. (*Id.*). Defendants also operate in a unified manner and under common control, and Ford placed current and former Ford employees in management and executive positions at BOSK. (*Id.*). Defendants share common business purposes and related activities, including operating BOSK's facilities in Kentucky and Tennessee for the purpose of manufacturing and providing batteries exclusively for Ford vehicles, which increases the revenue generated by those vehicles, decreases the cost of those vehicles, and helps Ford take advantage of financial incentives such as tax credits, and the hourly employees at these facilities are employed in furtherance of this shared purpose. (*Id.*, PageID.734-735). Overall, Plaintiffs allege that BOSK is,

in practice, a part of Ford, and that the use of "BlueOval" in BOSK's name—which Ford owns the trademark for— was created and intended to publicly identify the company as part of Ford. (*Id.*, PageID.735). Defendants also have policies at both facilities that permit hourly employees to wear Ford branded attire, utilize the Ford employee vehicle discount program, and rely on Ford's agreements with travel providers for employment-related travel. (*Id.*, PageID.735-736). Defendants represent to the general public that they are a joint venture and that they share control and pool resources, including by sharing payroll, expenses, budgets, employees, and decisions. (*Id.*, PageID.736). Ford exercises control over BOSK through its employees assigned to management positions at the facilities, who direct and oversee operations of the facilities, and Ford, also through those employees, supervised and oversaw the conditions of employment at BOSK. (*Id.*), PageID.736-737). Ford also, by controlling the budget and creating employment policies, determined the rate and method of pay, and maintained employment records for the employees at the BOSK facilities. (*Id.*, PageID.737).

## III. LEGAL STANDARD

### A. Rule 12(b)(2)

Fed. R. Civ. P. 12(b)(2) allows a defendant to move for dismissal of a case for lack of personal jurisdiction. When considering a motion under Rule 12(b)(2), the court may: (1) decide the motion upon the affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). Regardless of which method the court chooses, the plaintiff bears the burden of establishing that the court can exercise personal jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The weight of this burden, however, depends on whether the court decides to rule on the parties' written submissions alone or to hear evidence. *Id.* Where, as here, a court decides a motion without an evidentiary hearing, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal. *Anwar v. Dow Chem. Co.*, 867 F.3d 841, 847 (6th Cir. 2017). This burden is considered to be "relatively slight." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 116 (6th Cir. 1988)). The pleadings and affidavits must be viewed in the light most favorable to the plaintiff, and the court should not weigh any contrary assertions offered by the defendant. *AlixPartners, LLP v. Brewington,*

133 F. Supp. 3d 947, 954 (E.D. Mich. 2015) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005)).

**B. Rule 12(b)(6)**

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted). A claim has "facial plausibility"

when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the

facts alleged is improbable”); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (“Rule 12(b)(6) does not countenance ... dismissals based on a judge’s disbelief of a complaint's factual allegations”). Indeed, in assessing the sufficiency of a complaint, the court must determine only whether “‘the claimant is entitled to offer evidence to support the claims,’ not whether the plaintiff can ultimately prove the facts alleged.” *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

## IV. ANALYSIS

### A. BOSK’s Motion to Dismiss (ECF No. 89)

In its motion, BOSK argues that the case should be dismissed for lack of personal jurisdiction, or, alternatively, the case should be dismissed or transferred for improper venue. Each of these arguments will be addressed in turn.

#### 1. Personal Jurisdiction

BOSK argues that the Court lacks personal jurisdiction because BOSK is organized under the laws of Delaware and performs all of its operations in Kentucky and Tennessee, and that having a single mailing address in the state

of Michigan, as Plaintiffs allege, is insufficient to establish jurisdiction.[1] (ECF No. 89, PageID.821). Plaintiffs argue that there is both general and specific jurisdiction over BOSK because BOSK is "at home" in Michigan, and because the decision to pay Plaintiffs in the manner described in the complaint was made in Michigan. (ECF No. 93, PageID.902).

Federal courts may exercise personal jurisdiction in a federal question case if such jurisdiction is authorized by the long-arm statute of the state in which the court sits and is otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Michigan's long-arm statute provides for both "general" jurisdiction over limited liability companies (LLCs) under Mich. Comp. Laws § 600.731, and "limited" jurisdiction over LLCs under Mich. Comp. Laws § 600.735.

General personal jurisdiction allows a court to exercise jurisdiction regardless of whether the claim at issue is related to a defendant's contacts with the state. *Third Nat. Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). A Michigan court has general jurisdiction over an

---

[1] BOSK also argues that Plaintiffs' complaint should be dismissed because it fails to allege jurisdiction under Michigan's long-arm statute. However, BOSK does not point to any authority that would require Plaintiffs to identify the long-arm statute that authorizes jurisdiction in their complaint.

LLC if it is formed under the laws of Michigan; consents to jurisdiction pursuant to Mich. Comp. Laws § 600.745; or carries on a "continuous and systematic part of its general business" in Michigan. Mich. Comp. Laws § 600.731. In determining whether a business carries on "a continuous and systematic part of its general business" in Michigan, courts have looked at "whether the particular corporate entity has a physical location, officers, employees, or bank accounts in Michigan." *Glenn v. TPI Petroleum, Inc.*, 854 N.W.2d 509, 515 (Mich. Ct. App. 2014).

Similarly, for due process purposes, general jurisdiction exists when the defendant's affiliations with the forum state are "so continuous and systematic as to render" the defendant "essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (cleaned up). "'At home,' with respect to a corporation, and by extension, a limited liability company, means the place of incorporation and principal place of business." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-MD-02744, 2017 WL 11552971, at *2 (E.D. Mich. Apr. 19, 2017) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014)). "Principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's

activities," a location otherwise known as the entity's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

In this case, BOSK was formed under the laws of Delaware, but Plaintiff asserts that general jurisdiction exists because BOSK's principal place of business is in Dearborn, Michigan. (ECF No. 93, PageID.920). Plaintiffs argue that this is the case based on BOSK's own representations in filings submitted to the states of Michigan, Kentucky, and Tennessee and because BOSK's officers and managers are located in Dearborn, Michigan. (*Id.*, PageID.904). Plaintiffs also say that Ford employees run the venture from Ford's headquarters in Michigan; Ford supplied billions of dollars in capital and guaranteed BOSK's financing; the two share corporate headquarters in Dearborn, Michigan; and Ford placed its own employees in BOSK's management, who then decided the rate and method of payment and set the venture's employment policies. (*Id.*).

Taking the allegations in the light most favorable to Plaintiffs, Plaintiffs have presented a prima facie case of general jurisdiction based on the location of BOSK's principal place of business. Plaintiffs allege that BOSK ran its two plants in Tennessee and Kentucky from Ford's headquarters in Dearborn, Michigan, which, if true, easily establishes that BOSK's "nerve

center" is in Michigan. Further, attached to the complaint are multiple filings made with the states of Michigan, Kentucky, and Tennessee in which BOSK repeatedly indicated that the mailing address of its principal office was 1 American Road, Suite 120 in Dearborn, Michigan, and that its members and managers were located at the same. For example, in a September 2023 application for a certificate of authority to transact business in Michigan, under "the address of the office required to be maintained in the state of organization or, if not so required, the principal office of the limited liability company," BOSK indicated an address at 1 American Road, Suite 120 in Dearborn, Michigan. (ECF No. 88-2, PageID.768). In a 2022 application for authority to transact business in Kentucky, under "the mailing address of the entity's principal office," BOSK indicated 1 American Road, Suite 120 in Dearborn Michigan. (ECF No. 88-6). It did the same in 2023, 2024, and 2025 annual reports to the Kentucky Secretary of State, which also indicate the same address for the members and managers of BOSK. (ECF Nos. 88-7, 88-8, 88-9, 88-10). These filings also indicate that BOSK changed its address to one in Stanton, Tennessee in October 2025, one month after this case was filed. (ECF Nos. 88-11, 88-12).

Additionally, in support of their argument that Ford and BOSK are one employer, Plaintiffs attach an article in which CFO Jiem Cranney is quoted as saying, "In the joint venture agreement between Ford Motor Co. and SK Innovation, both parties agreed that some leadership positions would always be filled by just one company or the other," and "the plant management will always be Ford Motor Co." (ECF No. 88-15).

Although BOSK argues, and the declaration from Cranney asserts, that the address in Michigan was merely a "mailing address," this does not explain the consistent designation of the Dearborn address as not only BOSK's "mailing address," but also as its "principal place of business" in filings not only within the state of Michigan, but in Kentucky and Tennessee as well. Further, Cranney's declaration does not otherwise illuminate the true locations of BOSK's members and managers, who are also identified in the official filings as being located in Dearborn, Michigan, nor does it indicate where BOSK believes its principal place of business to be, if not in Michigan. As Plaintiffs point out, Cranney's declaration asserts that BOSK's corporate decision-making, strategy sessions, and board meetings take place at the facilities in Tennessee or Kentucky, but this does little to assist the Court in determining the location of BOSK's "nerve center" because "[a] corporation's

'nerve center,' usually its main headquarters, is *a single place*" which differs from the location of a corporation's "general business activities." *Hertz Corp.*, 559 U.S. at 95 (emphasis added). Ultimately, the declaration from Cranney merely supplies conclusory statements to contradict Plaintiff's allegations, and such contrary assertions hold no weight in this posture. *See AlixPartners,* 133 F. Supp. 3d at 954.

BOSK also points out in a footnote that the Supreme Court stated in *Hertz Corp.*, 559 U.S. at 97, in the context of a challenge to diversity jurisdiction, that "when faced with such a challenge, we reject suggestions such as, for example, the one made by petitioner that the mere filing of a form like the Securities and Exchange Commission's Form 10–K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'" However, although the general "nerve center" test laid out in *Hertz* is regularly applied in the context of personal jurisdiction, *see Hamm v. Acadia Healthcare Co.*, No. 3:21-CV-00550, 2022 WL 3129033, at *3 n.1 (M.D. Tenn. Aug. 4, 2022) (collecting cases), the particular statement BOSK points to was made in the context of the burden of persuasion for establishing such jurisdiction, and the Court hesitates to apply it here when Plaintiffs must merely establish a prima facie

case, and BOSK has done no more in response than file a one-page affidavit containing conclusory assertions to contradict Plaintiffs' allegations. *See, e.g.*, *Glob. Tech. Int'l, Ltd. v. Cont'l Auto. Sys., Inc.*, No. CA 0:12-3041-CMC, 2013 WL 1809773, at *4 (D.S.C. Apr. 29, 2013) (finding that plaintiffs had not established a prima facie case of general personal jurisdiction based on similar allegations where the defendant submitted two affidavits from its general counsel and assistant treasurer detailing the defendant's limited connections with South Carolina, including that only five of its seventeen officers and directors were based there; the reason for the erroneous designation in the state filings; and identifying a location in Aubern Hills, Michigan, as its actual principal place of business). Additionally, although BOSK says in its reply that "[w]hen [it] identified inaccuracies in its corporate filings, it took steps, as was required…by law, to update the filings to correct the inaccuracies," unlike the defendants in *Glob. Tech. Int'l*, BOSK makes no efforts to illuminate the reason for those purported "inaccuracies," nor does it attempt to explain why those "inaccuracies" were repeated year after year and "corrected" only after this lawsuit was filed.

Additionally, the Supreme Court also, later in that same paragraph, explained that:

> Indeed, if the record reveals attempts at manipulation—for example, that the alleged "nerve center" [in the filings] is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the "nerve center" the place of actual direction, control, and coordination, in the absence of such manipulation.

*Hertz Corp.*, 559 U.S. at 97. And indeed, here, if BOSK chooses to request an evidentiary hearing, at which it provides sufficient evidence that the Dearborn, Michigan address is in fact merely a mailing address and that it directs, controls, and coordinates its business from one of its facilities in either Kentucky or Tennessee, Plaintiffs may not be able to stand on these filings to persuade the Court that it has jurisdiction over BOSK. But in this posture and with only conclusory assertions in a one-page declaration to contradict Plaintiffs' allegations, the Court finds that Plaintiffs have done enough to establish a prima facie case of general jurisdiction under both Michigan law and the due process clause. As such, the Court need not go on to analyze whether limited personal jurisdiction also exists.[2]

2. Proper Venue

[2] Given this conclusion, the Court also finds it unnecessary at this time to consider Plaintiffs' argument that BOSK is subject to jurisdiction in Michigan because its direction and control emanate from Ford, which is indisputably at home in Michigan. *See* ECF No. 93, PageID.908.

Next, BOSK argues that dismissal or, alternatively, transfer to the Western District of Kentucky is required because this Court is not a proper venue. Plaintiffs argue that this district is the proper venue because Ford's world headquarters is in this district and BOSK is subject to general personal jurisdiction here, making both Defendants Michigan residents who reside in this district under 28 U.S.C. § 1391(b)(1). Plaintiffs also assert that venue is proper under 28 U.S.C. § 1391(b)(2) because the decision to adopt an illegal pay policy was made in this district.

Venue for a civil action brought in federal district court is governed by 28 U.S.C. § 1391, which provides in relevant part:

> Venue in general. A civil action may be brought in –
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, an entity is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). In states with multiple districts, a "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). When venue is improper, a district court may either dismiss the case or, in the interests of justice, transfer the case to a district or division where it could have been brought. *See* 28 U.S.C. § 1406(a).

BOSK's argument that the Court is an improper venue is based on a finding that it does not have personal jurisdiction, which as discussed above, is not the case. Given the conclusion that the Court has personal jurisdiction over BOSK because BOSK's principal place of business is in this district—as is Ford's—venue is proper under 28 U.S.C. § 1391(b)(1).[3]

[3] BOSK asserts for the first time in its reply that even if personal jurisdiction exists, the Court should still transfer the case to the Western District of Kentucky. However, BOSK fails to even identify the standard for a permissive transfer, and in any case, does not establish that the Western District of Kentucky is a venue in which the case could have been originally filed. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought* or to any district or division to which all parties have consented." (emphasis added)). And "[b]ecause Plaintiffs' choice of forum is given great consideration, Defendant bears the burden of showing that venue

For these reasons, BOSK's motion to dismiss is denied.

**B. Ford's Motion to Dismiss (ECF No. 91)**

In Ford's motion to dismiss, it argues that Plaintiffs' complaint fails to plead sufficient facts to put Defendants on notice of their alleged wrongdoing under Fed. R. Civ. P. 8(a), and that Plaintiffs have not plausibly alleged that Ford and BOSK are joint employers or that they operate as a single integrated enterprise to state a claim against Ford under Fed. R. Civ. P. 12(b)(6). (ECF No. 91). Each of these arguments will be discussed below.

1. Rule 8(a)

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). Ford argues that Plaintiffs impermissibly "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." (ECF No. 91, PageID.857) (quoting M*arcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012)). It says this is so because

---

transfer under § 1404(a) is appropriate." *Farmer v. LHC Grp., Inc.*, No. 2:20-CV-3838, 2020 WL 6390069, at *2 (S.D. Ohio Nov. 2, 2020) (citation omitted).

throughout the complaint, Plaintiffs repeatedly attribute the alleged conduct to “Defendants,” without distinguishing between them, leaving Ford “to guess whether Plaintiffs contend that Ford itself implemented payroll policies, supervised meal breaks, issued bonuses, or required the donning and doffing of equipment at facilities Plaintiffs allege were operated by [BOSK].” (*Id.*, PageID.858). Plaintiffs argue that listing multiple defendants collectively does not offend the Rule 8 pleading standard or the standard in Rule 12(b)(6), and that this is especially true where the plaintiffs allege that the defendants were joint employers and/or formed a single enterprise under the FLSA. (ECF No. 92, PageID.891-892).

Indeed, it is clear from the complaint that Plaintiffs allege that both Ford and BOSK, acting as one employer, implemented the policies at issue in the complaint. Ford’s argument that the complaint has failed to put it on notice of the claims against it is entirely unconvincing. Plaintiffs allege that “Defendants”—meaning *both Ford and BOSK*—jointly employed the production operators and technicians who staffed the BOSK facilities, and that they jointly put in place the timekeeping, overtime, and bonus “miscalculation policies,” which underlie Plaintiffs’ claims. Plaintiffs also allege that Ford controls the management of BOSK and that it dictated the

terms of their employment. These allegations are sufficient to put Ford on notice of the claims against it under Rule 8, and as will be discussed below, Ford's remaining arguments are more properly addressed under Rule 12(b)(6).

2. Rule 12(b)(6)

Ford also argues that the complaint should be dismissed because it fails to set forth the facts necessary to plausibly allege that Ford was Plaintiffs' employer under either the FLSA or the applicable state law.

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d). "[W]hether someone is an employer should focus on the 'economic reality' rather than 'technical concepts' of the employment." *Rhea v. W. Tennessee Violent Crime & Drug Task Force*, 825 F. App'x 272, 275 (6th Cir. 2020) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). Under the FLSA, "two or more entities can be joint employers and responsible for complying with the Act." *Ali v. Piron, LLC*, No. 17-CV-11012, 2018 WL 1185271, at *3 (E.D. Mich. Mar. 7, 2018) (citing 29 C.F.R. § 791.2(a)). "Kentucky courts interpret the KWHA consistent with the FLSA[.]" *Popeck v. Rawlings Co. LLC*, 2018 WL 2074198, at *17 n.37 (W.D. Ky. May 3, 2018), *aff'd*,

791 F. App'x 535 (6th Cir. 2019). Whether two entities constitute a joint employer is a question of law that depends on the factual circumstances of each case. *Piron*, 2018 WL 1185271, at *3 (citing *U.S. Dep't of Lab. v. Cole Enters., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995)).

The Sixth Circuit has not identified a single set of factors to determine whether two entities are "joint employers" under the FLSA, and different courts in this district take different approaches. *See id.* (discussing the different approaches). Ford asserts that the proper factors are "(1) exercise of the authority to hire, fire, and discipline; (2) control over pay and insurance; (3) and supervision." (ECF No. 91, PageID.860) (quoting *Carvajal v. Trinity Health Michigan*, No. 1:17-CV-375, 2018 WL 6704873, at *5 (W.D. Mich. Sept. 27, 2018), *report and recommendation adopted*, 2019 WL 1978465 (W.D. Mich. May 3, 2019)). Plaintiffs assert that the relevant factors are whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. (ECF No. 92, PageID.879-880) (citing *Dombal v. Trinity Health Corp.*, No. 25-CV-11910, 2026 WL 2474870, at *2 (E.D. Mich. Aug. 24, 2026)).

Ford argues that the complaint does not contain any specific factual allegations to support that Ford was a joint employer with BOSK, and specifically, that the complaint is devoid of any allegations that Ford had the authority to hire, fire, or discipline Plaintiffs or that it supervised their daily work.

In the complaint, Plaintiffs allege that Ford and BOSK have interrelated operations, common management, common control of labor relations, and common ownership and financial control. (ECF No. 88, PageID.732). Relevant to the factors above, Plaintiffs allege that the managers of BOSK are Ford employees and that Ford exercises control over BOSK by placing Ford employees to run BOSK's operations. They also say that Ford implemented, enforced, and revised policies at the BOSK facilities, that Ford created the employment policies for BOSK, and that Ford supervised and oversaw the conditions of employment for BOSK's employees. Plaintiffs have also alleged that Ford determined the rate and method of payment for the employees of BOSK, and that Ford controls BOSK by having its own employees direct and oversee the operations of the BOSK facilities. Plaintiffs also allege that Ford maintained employment records. Plaintiffs argue that these allegations also establish that Ford has the authority to hire and fire employees at BOSK

because BOSK operations are run by Ford employees, who direct and oversee operations and supervise the conditions of employment.

Ultimately, Plaintiffs have alleged that Ford employees run BOSK's operations, including managing operations and employees, which, taken in the light most favorable to Plaintiffs, implies that Ford employees have the authority to hire and fire BOSK's employees. Plaintiffs also allege that Ford determined the rate and method of payment for BOSK's employees and created employment policies, which adequately alleges that Ford had control over pay and insurance, and determined the rate and method of payment. Plaintiffs also allege that Ford supervised and oversaw the conditions of employment and maintained employment records. At this stage, these allegations are sufficient to plausibly establish that Ford and BOSK are joint employers under either set of factors. *See, e.g.*, *Hamm v. Acadia Healthcare Co.*, No. 3:21-CV-00550, 2022 WL 3129033, at *5 (M.D. Tenn. Aug. 4, 2022) ("These allegations do not address each of the factors to be considered. For example, Plaintiff does not allege that Acadia Healthcare and JV Holdings have the ability to hire or fire or that they maintain employment records. She has, however, alleged that they set rates of pay, payroll and hours policies, and supervise her work. At this stage, these allegations are sufficient to

plausibly allege that Acadia Healthcare is a joint employer.”); *Dombal v. Trinity Health Corp.*, No. CV 25-11910, 2026 WL 1465829, at *6 (E.D. Mich. Apr. 30, 2026) (“In sum, Dombal alleges that Trinity jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff and Opt-in Plaintiffs along with the facilities where they worked. Accordingly, as in *Hamm*, the Court finds these allegations sufficient to plausibly demonstrate that Trinity is his employer under the ‘economic reality’ test....”), *report and recommendation adopted*, 2026 WL 2474870 (E.D. Mich. Aug. 24, 2026); *Smith v. Guidant Glob. Inc.*, No. 19-CV-12318, 2019 WL 6728359, at *5 (E.D. Mich. Dec. 11, 2019) (“Plaintiff is not required to plead ‘detailed factual allegations’ about Defendants’ employment arrangements at this juncture. The Court can make a ‘reasonable inference’ here that Defendants maintained a level of control that could ultimately translate into a joint employment relationship.” (citation omitted)).

Ford also argues that Plaintiffs have failed to plausibly allege that it and BOSK represent a “single integrated enterprise.” In general, “[u]nder the ‘single employer’ or ‘integrated enterprise’ doctrine, two companies may be considered so interrelated that they constitute a single employer subject to

liability under federal law." *Martin v. Lincor Eatery, Inc.*, 423 F. Supp. 3d 432, 438 (E.D. Mich. 2019) (citing *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 993 & n.3 (6th Cir. 1997)). However, the Sixth Circuit's "rulings have not been entirely clear on the distinction between the concepts of 'joint' and 'single' employer." *Id.* (citing *Swallows*, 128 F.3d at 993 n.4). And the Sixth Circuit also has not applied the "single employer" doctrine to claims under the FLSA, although district courts in this Circuit have.[4] *See id.* at 439 (collecting cases). Given this, and the Court's conclusion that Plaintiffs have sufficiently alleged that Ford and BOSK are joint employers for purposes of the FLSA and state law, the Court finds it unnecessary to address Plaintiffs' allegations that BOSK and Ford also represent a "single integrated enterprise." *See Smith*, 2019 WL 6728359 (denying the motion to dismiss because the plaintiffs had adequately alleged that the defendants were joint employers where the plaintiffs alleged that the defendants were a single enterprise).

## V. CONCLUSION

[4] One set of factors for this determination requires the Court to look to "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Martin*, 423 F.Supp.3d at 438 (quoting *Swallows*, 128 F.3d at 993-94).

For the reasons set forth above, both motions to dismiss (ECF Nos. 89, 91) are **DENIED**.

**SO ORDERED.**

Date: November 4, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge